# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

United States of America,

       Plaintiff,

v.

**MEMORANDUM OPINION AND ORDER**
Crim. No. 11-200 (1) ADM/FLN

John Anthony Markert,

       Defendant.

_____

William J. Otteson, Esq., and David M. Genrich, Esq., United States Attorney's Office, Minneapolis, MN, on behalf of Plaintiff United States of America.

Joseph S. Friedberg, Esq., Joseph S. Friedberg, Chartered, Minneapolis, MN, on behalf of Defendant John Anthony Markert.

_____

On December 19, 2013, the undersigned United States District Court Judge conducted a resentencing hearing of Defendant John Anthony Markert in Duluth, Minnesota. The Eighth Circuit Court of Appeals remanded this matter for resentencing due to a procedural error in the calculation of sentencing loss under the United States Sentencing Guidelines ("U.S.S.G." or the "Guidelines"). The parties submitted supplemental briefing in light of the Eighth Circuit's ruling.

On appeal, the Eighth Circuit concluded that the Court committed procedural error by not considering, as the measure of actual loss under the Guidelines, an offset for "the net value of [the] loans, measured at the time their nominal nature was detected . . . ." United States v. Markert, 732 F.3d 920, 932 (8th Cir. 2013). The Eighth Circuit held that the victims' actual loss should be reduced by "certain economic benefits transferred to victims, to be measured at the time of detection of the offense." Id. (quoting U.S.S.G., App. C, Vol. II, Amend. 617, at 183).

This "offset" approach "recognizes that the offender who transfers something of value to the victim generally is committing a less serious offense than an offender who does not." Id. Because the net value of the loans at the time Pinehurt Bank ("the Bank") detected the fraud may be difficult to measure, the Eighth Circuit held that this Court "need only make a reasonable estimate of the loss." Id. at 933 (quotation omitted).

The Court has carefully examined the trial record in this case, and it finds the record sufficient to makes a loss determination without the need for an evidentiary hearing. See United States v. Theimer, 557 F.3d 576, 578 (8th Cir. 2009) ("The district court may rely on the evidence at trial to resolve sentencing disputes.").

The actual loss in this case, even after providing Markert with a credit against loss for value received by Pinehurst Bank prior to its detection of the offense, is in excess of $1 million but less than $2.5 million. Markert was convicted of misapplying Pinehurst Bank's funds through the devising, disbursement, and concealment of $1.9 million in nominee loans in March 2009. Markert caused the loan proceeds to be disbursed for the benefit of his co-defendant, George Wintz. The proceeds funded a fraudulent check-kiting scheme Markert knew Wintz had been perpetrating against the Bank for months. The trial record showed that, after accounting for fees retained by the Bank, the Bank disbursed $1,884,500 to the nominees on March 9, 2009. See Govt. Trial Ex. 57.

The Bank detected the offense on January 27, 2010, the date that an outside auditor's examination of one of the nominee loans led to the discovery of the scheme and Markert's termination. See Trial Tr. Vol. V [Docket No. 322] at 896-97. Thus, it must be determined whether there was any money or benefit returned to the Bank—by Markert or others acting

jointly with him—between March 9, 2009, and January 27, 2010.[1]  See U.S.S.G. § 2B1.1, App. Note 3(E)(i).  The evidence presented at trial established that, between March 2009 and January 27, 2010, the Bank received two repayments of principal on the original nominee loans.  First, in October 2009, Wintz made a $20,000 payment in principal on the $200,000 loan in the name of nominee borrower William McDonald.  See Govt. Trial Ex. 143, at 34.  Second, in November 2009, Wintz made a $40,000 payment on the $350,000 loan in the name of nominee borrower Lance Edlin.  See Govt. Trial Ex. 142, at 36.

A reasonable estimate of actual loss should properly take into account these repayments made to the Bank by Wintz prior to the Bank's detection of the offense in January 2010.  Subtracting these payments from the original net loan amount, the Court finds the actual loss in this case to be $1,824,500.  This amount is above $1 million, the Level I specific offense characteristic stated in the Guidelines, but below $2.5 million, the next higher specific offense characteristic stated in Level J.  As a result, the Guidelines indicate Markert should receive the same 16-level increase he received in his original sentencing.  See U.S.S.G. § 2B1.1(b)(1)(I).[2]

The Court further finds that this loss figure is reasonable even considering other, less-tangible forms of "value" received by the Bank during the time period at issue.  Upon the

---

[1] Any repayment of funds after January 27, 2010, is irrelevant to sentencing.  See Markert, 732 F.3d at 932 n.5.

[2] An internal Bank spreadsheet, dated January 27, 2010, maintained by a Bank employee at Markert's direction to monitor Wintz's true indebtedness to the Bank, calculated the outstanding indebtedness as of that date on the five nominee loans to be $1,849,318.74.  See Govt. Trial Ex. 347.  The discrepancy between this figure and the Court's finding appears to be due to accrued interest, as well as the inclusion of loan origination fees that resulted in the net proceeds to the nominees being approximately $15,000 less than the gross loan amount.  Even using that figure, the loss range would remain unchanged.

Bank's discovery of the scheme, the FDIC examined each of the loans and determined them to be "loss" loans due to the borrowers' lack of creditworthiness and the loans' nominee nature. This resulted in the Bank being required to book additional reserves that caused the Bank to become insolvent. See Pre-sentencing Report ("PSR") ¶ 14.

Giving Markert a credit against loss for any "value" in fraudulent loans that were found to be uncreditworthy is inappropriate. At trial, each of the nominees generally testified that, although they understood they were legally obligated to repay these loans, they expected and relied upon Wintz actually to do so. Indeed, at least some of the nominees' testimony, including McDonald's and Edlin's, showed they lacked the ability to repay the loans and shared a growing anxiety, throughout 2009, about Wintz's failure to make timely payments on the loans in their name.

In summary, a $60,000 credit against the original net amount of the nominee loans is appropriate. The Court therefore finds Markert's guideline range to be unchanged from the range found at the original sentencing. The offense level is 29 and the criminal history category is I, resulting in a guideline imprisonment range of 87 to 108 months.

The Court will re-impose the same 42-month term of imprisonment previously ordered, with the same terms and conditions of supervised release following incarceration. This sentence, a variance downward from the guideline range, is sufficient but not greater than necessary to satisfy the sentencing goals of 18 U.S.C. § 3553(a). The Court has considered not only the Guidelines, but also the other sentencing factors contained in the statute, including the nature and circumstances of the offense, Markert's history and characteristics, the seriousness of the offense, the need to promote respect for the law and provide just punishment, the need to deter

criminal conduct, and the need to protect the public.

The Court is mindful of Markert's personal health issues, and has considered them in fashioning a sentence below the guideline range.  The Court has also considered Markert's culpability relative to his co-defendant, Wintz.  Although Wintz was the primary wrongdoer, he could not have committed his offenses without the assistance of a bank insider.  Markert, as the officer of Pinehurst Bank, was in a position of trust and abused that trust by misapplying Bank funds for Wintz's benefit.

Based upon the foregoing, and all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant John Anthony Markert is resentenced for the same duration, and according to the same terms, as he was originally sentenced.

BY THE COURT:

    s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  December 26, 2013.